UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KELLY KECK,

                Plaintiff,

        v.                                      Case No. 20-C-1063

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

      Plaintiff Kelly Keck filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability and disability insurance benefits under Title II of the Social Security Act. Keck contends that the decision of the administrative law judge (ALJ) is flawed and requires remand for several reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

      Keck filed her initial application for disability insurance benefits on March 2, 2017. She alleged disability beginning July 15, 2015, although she noted in her disability report that she did not stop working until January 8, 2016. R. 179, 213. Keck listed depression, chronic fatigue, fibromyalgia symptoms, memory problems, poor decision making, lack of physical endurance, and allergy to chemicals (affects breathing) as the conditions limiting her ability to work. R. 213. After her application was initially denied, Keck added in her request for reconsideration that she had "[m]ore problems and pain related to breast cancer," including vertigo, dizziness, memory issues, and falling. R. 284. Her application was denied upon reconsideration, and Keck requested

a hearing before an ALJ. On April 16, 2019, ALJ Edward Studzinski held a video hearing at which Keck, who was represented by counsel, and a vocational expert (VE) testified. R. 36–76.

At the time of the hearing, Keck was 54 years old. She testified that she stopped working between December 30, 2015, and January 3, 2016, after she received her breast cancer diagnosis. R. 55. She indicated that the chemotherapy and other treatments give her cognitive problems and that she has early onset dementia. *Id.* Keck testified that she mainly has difficulty with her short-term memory. R. 56. She also stated that some days she feels ready to get a job and then an hour later she cannot remember where her car is located. *Id.* As to her typical day, Keck testified that she wakes up, feeds her cats, and then experiences confusion over what to do next, like take out the garbage, get dressed, or something else. R. 56–57. She stated that sometimes she cannot remember whether she ate breakfast. R. 57.

Keck testified that she has pain in her knees, aches all over and has neuropathy in her legs caused by her chemotherapy. *Id.* She stated that the neuropathy causes her to trip a lot but indicated that she has been taking classes for cancer patients and has "gotten better at walking." *Id.* She noted that, in 2016, she had a neoplastic disease that involved a "capillary leak syndrome," which caused her ankles to start swelling if she sat for more than a few hours at a time. R. 62–63. She estimated that she could stand continuously for 45 minutes to an hour. R. 63.

Keck stated she lives alone and shops for herself off a checklist she prepares the night before. She makes easy meals using the toaster or microwave and cleans up after herself. R. 58. In discussing her fatigue, she stated that "it is a state of fear more than anything because when you know that you can't remember things and I can't pick and choose what I'm going to remember or what I'm going to be able to do or if I trip or not, it just happens." *Id.* She stated that she is not supposed to drive in bad weather and was in two car accidents in the past year. *Id.* Keck described her depression symptoms as feeling "anxious and fearful and numb." R. 59. Keck explained that

2

she has a master's degree in social work, and prior to quitting her job due to her cancer, she was working as a social worker in hospice. *Id.* In that position, she had a variety of duties ranging from helping nurses clean patients to paperwork to helping clients make funeral arrangements. R. 60. She had also previously worked in accounting and as an X-ray technician. *Id.* When asked if she thought she could do a simple job like filing papers, answering phones, or filling boxes, she responded that she could pack some boxes with light things but could not file because of her confusion and memory issues. R. 63.

In a fifteen-page decision dated July 5, 2019, the ALJ concluded that Keck was not disabled from July 15, 2015, her alleged onset date, through her date last insured. R. 16–30. To reach that conclusion, he followed the five-step sequential evaluation process for determining disability established by the Social Security Administration (SSA). The ALJ found that Keck last met the insured status requirements of the Social Security Act on December 31, 2016, and had not engaged in substantial gainful activity from her alleged onset date through her date last insured. R. 18. He concluded that Keck had the following severe impairments: depression, anxiety, and residuals of breast cancer and treatment. *Id.* He determined that Keck did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then provided the following residual functional capacity (RFC) assessment:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand or walk throughout an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgement. She ought not perform work which

3

requires multitasking. She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. She ought not perform work which requires significant self-direction. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

R. 20–21.

The ALJ found that through her date last insured, Keck was unable to perform any past relevant work as a customer service representative or X-ray technician. R. 28. He determined that, considering her age, education, work experience, and RFC, Keck was able to perform other jobs that existed in the national economy in significant numbers through her date last insured, including mail clerk and cleaner maids. R. 28–29. Based on that finding, the ALJ concluded that Keck was not disabled from July 15, 2015, through December 31, 2016. R. 28–29. The Appeals Council denied her request to review the ALJ's decision, making that decision the final decision of the Commissioner in her case. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f).

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential.

4

*Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every

5

piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. New and Material Evidence**

Keck argues that the Appeals Council failed to consider the "new and material" September 17, 2019, medical source statement from her psychiatrist, Dr. Stephen L. Shopbell. Keck obtained the medical source statement after the ALJ issued the unfavorable decision. A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405.

> Evidence is "new" if it was "not in existence to the claimant at the time of the administrative proceeding." New evidence is "material" if there is a "reasonable probability that the ALJ would have reached a different conclusion had the evidence

6

been considered. Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."

*Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citations omitted).

In assessing the additional evidence Keck submitted, the Appeals Council stated, "The Administrative Law Judge decided your case through December 31, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2016." R. 2. Keck asserts that, although the opinion post-dates the relevant period by over two years, the opinion is "new and material" evidence because it did not exist at the time of the administrative proceedings and is based on a "comprehensive review of treatment and medical records from his office from 2012 through 2019." Pl.'s Reply Br. at 3, Dkt. No. 30. Dr. Shopbell's medical source statement describes Keck's current condition, not her condition at the time her application was under consideration by the SSA. Therefore, Dr. Shopbell's medical source statement does not meet the standard for new and material evidence, and the Appeals Council properly denied Keck's request for review. *See Schmidt*, 395 F.3d at 742.

**B. Illegible Treatment Notes**

The ALJ noted in his decision that Keck sought treatment with Dr. Shopbell monthly from January through March 2015, once in October 2015, and once in January 2016. *See* R. 934–45. He also indicated that subsequent notes show that Keck had appointments after her date last insured from May 2017 through 2018 almost monthly. R. 1341–66. The ALJ found that the treatment notes "do not contain much information about these sessions and are largely illegible." R. 24. Keck asserts that the ALJ was required to contact Dr. Shopbell to obtain clarification regarding his illegible treatment notes.

Pursuant to 20 C.F.R. § 404.1520b, the ALJ "may recontact [a claimant's] treating physician . . . or other medical source" if the evidence is incomplete or inconsistent. In this case, the ALJ did not find that the evidence was insufficient to reach a determination in this case. Although Keck contends that these treatment notes were crucial to her claim because they support Dr. Shopbell's September 17, 2019, medical source statement, the medical source statement was obtained and submitted after the ALJ issued the unfavorable decision and is therefore not relevant. In addition, only two of the treatment notes at issue were from the relevant time period. Keck does not explain how the notes that the ALJ found to be illegible precluded meaningful review or supported greater limitations during the relevant period. Therefore, the ALJ did not err in his assessment of Dr. Shopbell's notes. *See Gildon v. Astrue*, 260 F. App'x 927, 929 (7th Cir. 2008).

**C. RFC Assessment**

Keck asserts that the ALJ erred in assessing her RFC. A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). At the hearing level, an RFC assessment "is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014); 20 C.F.R. § 4041546(c). The ALJ must consider the "entire record" and "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). In assessing a claimant's RFC, the ALJ has the responsibility for resolving any conflicts between the medical and nonmedical evidence. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). The Court's task "is to determine whether substantial evidence supports the ALJ's RFC conclusion." *Id.*

Keck asserts that the ALJ failed to recognize her chronic fatigue as a severe impairment and that, as a result, the ALJ's decision to limit her to light exertional work, rather than sedentary exertional work, is not supported by substantial evidence. But even though the ALJ may not have

8

identified Keck's fatigue as a separate impairment, he clearly considered the effect of her fatigue on her RFC. The determination of whether an alleged impairment is severe at step two is essentially a "de minimus" screening device that allows the SSA to increase "the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *see also Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (noting that the step two determination of severity is "merely a threshold requirement"). If no severe impairments are found, the case ends with a denial of the application. But if the ALJ determines that the claimant has at least one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523.

In this case, the ALJ found that Keck had severe impairments including depression, anxiety, and residuals of breast cancer and treatment and continued with the sequential evaluation to address and evaluate all of Keck's impairments, including fatigue. In evaluating Keck's fatigue, the ALJ relied upon the physicians who considered her fatigue and Keck's testimony and subjective reports. The ALJ noted that Keck reported having residuals from the breast cancer treatments resulting in cognitive problems with her memory as well as fatigue. She testified that because of fatigue, she naps one to two hours daily. R. 21–22. The ALJ noted, however, that while Keck complained of fatigue and depression in 2015 and 2016, by November 2016, she was described as having made an excellent recovery from breast cancer and was walking daily. R. 22–25.

The ALJ gave great weight to the state agency medical consultants who considered Keck's fatigue and determined Keck was capable of light work. R. 27, 87, 103. But he did not simply adopt their opinions. He explained that the state agency medical consultants did not have the

9

benefit of hearing Keck's testimony. Based on his consideration of that testimony, he added additional limitations:

> To account for the claimant's testimony of fatigue, concentration and driving difficulties, I have provided that she is limited to working in non-hazardous environments and should avoid concentrated exposure to unguarded hazardous machinery. To account for her complaints of pain, fatigue and falls, I have provided that she should never climb ladder, ropes or scaffolds.

R. 27. In short, because the ALJ did not ignore Keck's allegations of fatigue and incorporated limitations into the RFC to accommodate that condition, his failure to list it as a severe impairment was not error.

Keck also asserts that the ALJ failed to adequately incorporate her limitations in the broad functional areas of concentration, persistence, and pace (CPP) into the RFC and hypothetical posed to the VE. "It is well-established that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester*, 920 F.3d at 511 (internal quotation marks and citations omitted). But to repeat, an RFC assessment "is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas*, 745 F.3d at 808. It is up to the ALJ to put the limitations he or she finds into words that the vocational expert is likely to understand. Translating opaque phrases like "moderate limitations in concentration, persistence and pace" into descriptions of the specific kinds of activities the ALJ finds the claimant capable of performing assists the vocational expert in identifying the types of jobs that would be available. The substantial evidence test does not allow a court to substitute its view of what activities a claimant is capable of performing for the finding of the ALJ.

The Seventh Circuit has recognized that "the law does not require ALJs to use certain words, or refrain from using others, to describe the pace at which a claimant is able to work." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). The same is true of the other functional areas.

10

"As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement. As a matter of substance, however, the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019)). Indeed, "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).

In determining Keck's RFC in this case, the ALJ relied on the medical opinion evidence, as well as the other evidence in the record. Assessment of Keck's mental impairment was completed by Dr. Scott Trippe, a consultative psychologist; Dr. Kevin Andrasko, Keck's treating physician; Dr. Deborah Pape, a state agency medical consultant; and Dr. Ellen Rozenfeld, a state agency medical consultant. The ALJ gave the opinions of Dr. Trippe, Dr. Pape, and Dr. Rozenfeld great weight and the opinions of Dr. Andrasko little and no weight. Because the ALJ gave the state agency psychologists' opinions "great weight," R. 27, the Court will look to their opinions to determine whether the ALJ properly assessed Keck's RFC.

Both state agency reviewing psychologists completed a Mental Residual Functional Capacity Assessment (MRFC) form, R. 87–89, 103–06, to document their opinions based on their review of the record. The MRFC is a form the agency uses to document its assessment of a claimant's mental RFC. The form lists a series of questions intended to address the claimant's ability to perform various work activities. For each functional area, the review psychologist is asked if the individual has any limitations. Follow-up questions then ask the reviewer to rate the

11

individual's limitations as to various activities within that functional area. The Social Security Administration's Program Operations Manual System (POMS) lists the ratings to be used and what they are intended to mean. The ratings are "not significantly limited," which means "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity;" "moderately limited," which means "the individual's capacity to perform the activity is impaired;" and "markedly limited," which means "the individual cannot usefully perform or sustain the activity." POMS DI 24510.063, Social Security, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063 (last visited Mar. 31, 2022). The reviewer can also indicate that there is no allegation of a limitation or that the evidence is insufficient. When the activity is rated "moderately limited," the degree and extent of the capacity or limitation must be described in narrative form in another section of the MRFC. *Id.*

Dr. Pape completed the MRFC on July 17, 2017. R. 87–89. She noted that, with respect to sustained concentration and persistence, Keck was moderately limited in the ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 88. Dr. Pape explained in the narrative portion of the assessment, "Claimant is limited to simple instructions of no more than three steps and would be expected to be off work task for up to 10% of the workday." *Id.* As to Keck's adaptation limitations, Dr. Pape opined that Keck was moderately limited in the ability to respond appropriately to changes in the work setting. *Id.* In the narrative portion of the form, Dr. Pape stated, "Claimant limited to simple, routine work." R. 89. Dr. Pape did not provide any further narrative description of Keck's MRFC.

12

At the reconsideration level, Dr. Rozenfeld completed the MRFC on December 20, 2017. R. 103–06. As to Keck's understanding and memory, Dr. Rozenfeld found that Keck was moderately limited in her ability to understand and remember detailed instructions. R. 104. She explained in the narrative portion of the assessment that Keck "retains the mental capacity to concentrate on, understand, and remember routine, repetitive instructions." *Id.* With respect to Keck's sustained concentration and persistence, Dr. Rozenfeld opined that Keck was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* She explained that Keck "is limited to simple instructions of no more than three steps and would be expected to be off work task for up to 10% of the workday." *Id.* As to Keck's adaptation limitations, Dr. Rozenfeld found that Keck was moderately limited in the ability to respond appropriately to changes in the work setting. R. 105. In the narrative section, Dr. Rozenfeld noted, "Claimant limited to simple, routine work." *Id.* Dr. Rozenfeld did not provide any further narrative description of Keck's MRFC.

After summarizing the state agency consultants' opinions, R. 26, the ALJ gave great weight to their opinions. R. 27. The ALJ found that Keck had the following limitations:

> [T]he claimant is limited to simple, routine tasks, work involving no more than simple decision making, and requiring the exercise of only simple judgement, with no more than occasional and minor changes in the work setting and no multitasking. Further, she can perform work requiring an average production pace but is incapable of above average or highly variable production pace work, and cannot perform work requiring significant self-direction. To account for her moderate limitations in social functioning, I have precluded her from direct public service work in person or by phone. In addition, I find that she can tolerate only brief and superficial interaction with the public incidental to primary job duties. Further, she can tolerate brief and superficial interaction with coworkers and supervisors but no tandem tasks and she is unable to work in crowded hectic environments.

*Id.* The ALJ concluded that such limitations account for Keck's mental impairments of depression and anxiety and her moderate limitations in mental functioning. The ALJ determined that the RFC should not be reduced any further. *Id.*

Keck asserts that the ALJ's RFC determination does not account for all of the limitations the state agency psychologists found. Specifically, Keck contends that there is no limitation corresponding to the finding that Keck would be limited to simple instructions of no more than three steps or that Keck would be expected to be off work task for up to 10% of the workday. But there is no requirement that the ALJ's RFC assessment track verbatim the medical opinions the ALJ considers. *See* 20 C.F.R. § 404.1546(c) (placing responsibility for assessing a claimant's RFC with the ALJ). The ALJ gave "great weight" to the state agency consultants' opinions; he did not adopt them wholesale. In any event, the ALJ adequately accounted for the limitations Drs. Pape and Rosenfeld found. To accommodate the limitations to simple instructions of no more than three steps and to routine repetitive instructions, the ALJ restricted Keck to simple, routine tasks, no multitasking, and no more than simple decision-making. R. 21. As to the time-of task limitation, the ALJ's decision is consistent with a restriction of being off-task up to 10% of the workday. The ALJ asked the VE at the hearing about off-task tolerances in the jobs the ALJ found that Keck could perform, including mail clerk and cleaner maid. R. 74–75. The VE testified that, in those jobs, a person is expected to be focused on tasks between 90 and 95% of the workday. R. 75. Because the jobs the ALJ found Keck could perform were compatible with an off-task allowance of up to 10%, the ALJ was not required to include an explicit time-off task limitation in the RFC. The ALJ also included further restrictions that the state agency consultants did not find. In particular, the ALJ restricted Keck to no multitasking; only average production pace; no significant self-direction; only incidental, brief, and superficial interaction with the public; no direct public

service, in person or over the phone; only brief and superficial interaction with supervisors and co-workers; no tandem tasks; and no crowded or hectic environments. R. 21.

Keck asserts that the ALJ overlooked certain parts of her testimony and the November 2015 consultative examination regarding her limitations in concentration. An ALJ is "not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence," however. *Pepper*, 712 F.3d at 363. The ALJ thoroughly discussed the evidence in the record, including the medical record, medical opinions, Keck's testimony and subjective reports of her symptoms, and her husband's statements. R. 21–28. Keck's criticisms of the ALJ's decision essentially request that the Court reweigh the evidence and overrule the ALJ's opinion. But it is not the Court's role to reweigh the evidence or substitute its judgment for that of the ALJ. *Lopez*, 336 F.3d at 539. The ALJ reasonably accounted for Keck's CPP limitations in the RFC and hypothetical question. He provided an accurate and logical bridge from the evidence to his conclusions, and substantial evidence supports the ALJ's RFC assessment. Accordingly, remand is not warranted.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of March, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge